JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

County in which action arose _____

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
TODD STEIN & ASSOCIATES, LLC, a Michigan Limited Liability Company and TODD STEIN, an individual

## DEFENDANTS
VINCENT INDUSTRIAL PLASTICS, INC., a foreign corporation

**(b)** County of Residence of First Listed Plaintiff: **GENESEE**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant: _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
PAUL J. GOYETTE (P-41579), ALAN D. PENSKAR (P-41759), HARRIS, GOYETTE, WINTERFIELD, PENSKAR & FARREHI, 5111 W. Bristol Road, Suite A, Flint, Michigan 48507 (810) 230-1400

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | | ☐ 365 Personal Injury - Product Liability | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 480 Consumer Credit |
| | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ Exchange |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 USC 1332(a)

Brief description of cause:
Breach of contract under Sales Agency Agreement

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions): JUDGE _____ DOCKET NUMBER _____

DATE: May 19, 2009
SIGNATURE OF ATTORNEY OF RECORD: *[signature]*

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

1.     Is this a case that has been previously dismissed?     ☐ Yes     ☒ No

   If yes, give the following information:

   Court: _____

   Case No.: _____

   Judge: _____

2.     Other than stated above, are there any pending or previously discontinued or dismissed companion cases in this or any other court, including state court? (Companion cases are matters in which it appears substantially similar evidence will be offered or the same or related parties are present and the cases arise out of the same transaction or occurrence.)     ☐ Yes     ☒ No

   If yes, give the following information:

   Court: _____

   Case No.: _____

   Judge: _____

Notes : _____

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DICISION

TODD STEIN & ASSOCIATES, LLC,            FILE NO.
a Michigan Limited Liability Company
and TODD STEIN, an individual,

     Plaintiffs,                                    JUDGE:

vs.

VINCENT INDUSTRIAL PLASTICS,
INC., a foreign corporation,

     Defendant.

_____/

HARRIS, GOYETTE, WINTERFIELD,
PENSKAR & FARREHI
PAUL J. GOYETTE (P-41579)
ALAN D. PENSKAR (P-41759)
Attorneys for Plaintiffs
5111 W. Bristol Road, Suite A
Flint, Michigan 48507
(810) 230-1400
_____/

## COMPLAINT

Plaintiffs Todd Stein & Associates, LLC and Todd Stein (collectively "Plaintiffs"), by and through their attorneys, Harris, Goyette, Winterfield, Penskar & Farrehi, by Alan D. Penskar, state for their "Complaint" as follows:

### JURISDICTIONAL ALLEGATIONS

1.     Todd Stein & Associates, LLC, is a Michigan Limited Liability Company whose principal place of business is in the County of Genesee, State of Michigan. Todd Stein is an individual who resides in the County of Genesee, State of Michigan and is the sole member of Todd Stein & Associates.

1

2. Vincent Industrial Plastics, Inc. ("Defendant") is, upon information and belief, a Kentucky Corporation whose principal place of business is at 232 Heilman Avenue, Henderson, Kentucky 42420.

3. This Court has subject-matter jurisdiction pursuant to 28 USC 1332(a), as there is a complete diversity between Plaintiffs and Defendant and the amount in controversy exceeds $75,000.00, exclusive of interest attorney fees and costs.

4. This Court has general and/or limited personal jurisdiction over the Defendant as it maintains systematic and continuous contracts with the State of Michigan, including, inter alia, with customers who were obtained pursuant to the sales agency contract at issue.

5. Venue is proper in the Eastern District of Michigan, Southern Division pursuant to 28 USC 1391(a).

## **GENERAL ALLEGATIONS**

6. Plaintiffs are manufacturer's representatives in the automotive industry.

7. Defendant is a manufacturer of, inter alia, injection-molded parts and assemblies utilized, among other places, in the automotive industry.

8. In May, 2005 Plaintiffs and Defendant executed a certain "Sales Agency Agreement" (the "Agreement"). (Exhibit "1")[1] The Agreement sets forth, inter alia, the payment obligations of Defendant for sales achieved through Plaintiffs' efforts.

9. Plaintiffs performed by achieving sales for the benefit of Defendant with certain customers.

---

[1] The signed Agreement, due to the print size, cuts off certain terms at the bottom of pages 1 and 2. For the Court's benefit, a clean (but unsigned) copy is also attached (under Exhibit "1") which includes all such terms.

2

10. Notwithstanding sales made by Plaintiffs on Defendant's behalf, Defendant failed to pay Plaintiffs.

## COUNT I
## BREACH OF CONTRACT

11. Plaintiffs restate and re-allege paragraphs 1-10 as if fully set forth herein.

12. The "Sales Agency Agreement" is an enforceable contract.

13. By failing to tender all commissions earned by Plaintiffs, Defendant breached that contract.

14. As a direct and foreseeable consequence of Defendant's breaches, Plaintiffs suffered and continue to suffer damages.

WHEREFORE, Plaintiffs Todd Stein & Associates, LLC and Todd Stein, respectfully request that this Court enter a Judgment in their favor and against Defendant Vincent Industrial Plastics, Inc. in whatever amount this Court deems just and equitable, in addition to attorney fees, interest and costs.

## COUNT II
## REQUEST FOR ACCOUNTING

15. Plaintiffs restate and re-allege paragraphs 1-14 as if fully set forth herein.

16. The information used to calculate some of Plaintiff's' outstanding commissions owed are solely within the possession of Defendant, including payments tendered by customers of Defendant for specific projects which resulted from Plaintiffs' efforts.

17. Plaintiffs are entitled to a full and complete accounting of all payments made by these customers including, inter alia, the amounts; dates; contracts upon which the payments were made; and amounts remaining owed.

3

18. Without all such information, Plaintiffs are unable to determine the total amount owed to them by Defendant under the Agreement.

WHEREFORE, Plaintiffs Todd Stein & Associates, LLC and Todd Stein respectfully request that this Court enter a Judgment in their favor and against Defendant Vincent Industrial Plastics, Inc. ordering Defendant to provide a full and complete accounting of all payments made by these customers including, inter alia, the amounts; dates; contracts upon which the payments were made; and amounts remaining owed under the Agreement and award Plaintiffs any and all other relief this Court deems just and equitable, including attorney fees and costs.

## COUNT III

## VIOLATION OF THE MICHIGAN SALES REPRESENTATIVES ACT, MCL 600.2961 ET. SEQ. (the "Act")

19. Plaintiffs restate and re-allege paragraphs 1-18 as if fully set forth herein.

20. Under Section 1(d) the Act, Defendant is a "principal".

21. Under Section 1(e), Plaintiffs are "sales representatives".

22. Plaintiffs earned "commissions" as defined in Section 1(a) for sales generated on behalf of Defendant.

23. Notwithstanding generating such sales and earnings commissions, Defendant violated the Act by failing to pay Plaintiffs within forty-five (45) days after the commissions came due, and doing so intentionally.

24. As a consequence of Defendant's wrongful actions, Plaintiffs suffered damages.

WHEREFORE, Plaintiffs Todd Stein & Associates, LLC and Todd Stein respectfully request that this Court enter a Judgment in their favor and against Defendant Vincent Industrial Plastics, Inc. under the Michigan Sales Representatives Act, MCL 600.2961 et. seq., in whatever amount this Court deems just and equitable, including actual damages under Section 5(a) and an additional double damages under Section 5(b), in addition to attorney fees, interest and costs.

Dated: May 29, 2009.        /s/_____
                            PAUL J. GOYETTE  (P-41579)
                            ALAN D. PENSKAR  (P-41759)
                            Attorneys for Plaintiffs

### JURY DEMAND

Plaintiffs respectfully request a Trial by Jury on all triable claims pursuant to Fed. R.Civ.P. 38.

Dated: May 29, 2009.        /s/_____
                            PAUL J. GOYETTE  (P-41579)
                            ALAN D. PENSKAR  (P-41759)
                            Attorneys for Plaintiffs

Z:\ALL DOCS\WPDOCS\ANDREA\CIVIL\ADP\STEIN, TODD\COMPLAINT.doc

## Sales Agency Agreement

Agreement, made this _17_ day of _May_ 200_5_, between _Vincent Ind._ _n/f Plastics_ and Todd Stein & Associates.

1. **Representation.** The Company and Agency agree to a sales representation agreement affective as of May ___ 2005. The Agency agrees to promote, represent and sell, on behalf of the Company, injection molded parts and assemblies, and other manufactured products produced by them, with or without processes such as painting, plating, etc. The Company grants the Agency the right to promote, represent and sell its products on the terms and for the compensation described in this Agreement. The Agency shall act on behalf of the Company to collect outstanding invoices, when necessary, and negotiate favorable terms.

2. **Non-Exclusivity.** The Agency shall have the right to act as a sales agent for other persons and firms and to perform services similar to those to be performed for the Company pursuant to this Agreement, but upon written request by the Company, the Agency shall furnish to the Company a written list of all persons or firms for which the Agency is presently acting as a sales representative. The Agency will subcontract representation for Company to Peter Renaud of Renaud Associates for a list of specific Accounts listed on "Exclusive Customer List".

3. **Office and Contacts.** The Agency shall maintain a permanent place of business, with a telephone and mail facilities. The Agency further agrees to establish and maintain appropriate files on all customers of the Company, and to keep in those files records, correspondence and other communications with customers and prospective customers. The Agency agrees to diligently promote the Company's products by regular personal contact with customers and prospective customers, and to assist the Company in resolving any questions or problems that customers may have with respect to existing business or potential business. The Agency agrees to keep the company informed at all times as to sales activities performed on behalf of the Company. Agency shall provide weekly call reports and monthly summary of sales activity.

4. **Retainer.** The Company shall pay the Agency a fee of $10,000.00 per month for 12 months. The retainer to be paid in two monthly installments of 5,000.00 each on the 15th and 30th of each month. The retainer will be reduced in ratio to the commissions received by the Agency.

5. **Commissions.** The Agency shall be paid a commission on sales of the Company's products as follows:

   A. During the term of this agreement, the Agency shall receive a commission of five percent (5%) on all sales of any of the parts or products listed on Schedule A of this Agreement. (maintenance)
   B. The Agency shall receive a commission on all sales by the Company to any of the Customers listed on Schedule B ("Exclusive Customers") of this Agreement. The Amount of the commission payable with respect to sales to customers listed on Schedule B shall be five percent (5%).
   C. The Agency shall receive a commission on all sales by the Company of a part or product listed on Schedule C ("Non Exclusive Customers") of this Agreement, which commission shall be three and one half percent (3.5%). To be revisited after six (6) months.
   D. It is contemplated by the parties that the Agency will develop new customers for the Company, which customers will be added as either "Exclusive Customer" on Schedule B or as a "Non Exclusive Customer" on Schedule C, as agreed upon by the parties. It is further contemplated that specific parts and products may, from time to time and upon agreement of the parties, be Added or removed from Schedule A. Upon agreement by the parties to change in a Schedule, an amended

adjustments, or an amendment to the applicable Schedule.

6. **Definitions.** It is agreed that for purposes of this Agreement, the following definitions and conditions shall be applicable:

   A. A sale shall be considered to have been made on the date on which the applicable purchase order number is received either verbally or in written by the Company.
   B. For purposes of computing commissions due to the Agency, the applicable commission rate shall be computed on the invoice amount, net of all discounts, transportation costs and any other charges not paid by the customer.
   C. Commissions earned by the Agency shall be due and payable when payment for the sales is received from the customer by the Company. On or before the last day of each month during the Term of this Agreement, the Company shall pay the Agency the commission due and owing with respect to all payments received by the Company through the last day of the previous month, and shall provide the Agency with a written summary of the payments with respect to which the commissions are being paid.
   D. For purposes of computing the commission earned, payable, and any adjustments, the Company's Books of account shall be conclusive and binding.

7. **Termination.** This agreement shall remain in effect unless and until terminated at any time by ninety (90) days written notice by either of the parties. Termination shall be effective ninety (90) days after written notice of termination is mailed or delivered to the person being notified.
   A. In the event of termination for any reason, then the Company shall pay the Agency the following amounts:

      i. The agency will receive the agreed commissions for up to (2) years after termination on existing business; any business quoted during the time of representation; and purchase orders received for any new business quoted or awarded within (6) months after termination. Applies to "Exclusive Customers" only.
      ii. In the event the company chooses to terminate the agreement, the company is still liable to pay the retainer for the balance of the (12) month contract.

8. **Non-Disclosure and Confidentiality.** The Agency agrees that neither it, nor any of its employees or agents shall, either during the term of this Agreement or any time thereafter, communicate or disclose to any persons any knowledge or information acquired during its association with the Company relating to or concerning any of the Company's confidential information regarding inventions, trade secrets, systems, business and affairs of the Company, and agrees that neither it nor any of its employees or agents shall utilize or make available any such knowledge or information to any competitor of the Company.

9. **Administration and Authority.** The Agency shall be responsible for all costs and expenses incurred in connection with performing its duties pursuant to this Agreement. All proposals, quotations and orders

**Non Exclusive Customers**" The company shall have the right to take back the "Non Exclusive Customers" they had prior to this Agreement, but will owe commissions on all new sales the Agent has brought to the Company.

**Agreement.** Any modification or amendment to this Agreement shall be effective on if in writing signed by both of the parties.

WITNESS WHEREOF, this Agreement has been signed by each of the parties effective as of the d... the beginning of this Agreement.

Company:

James F. Vincent
Vincent Industrial Plastics, Inc.
232 Heilman Avenue
P.O. Box 47
Henderson, Kentucky 42420

*[signature] 5/17/2005*

Representative:

Todd Stein
Todd Stein & Associates
6129 Brookstone Lane
Grand Blanc, MI 48439

*[signature] 5/17/05*

# Sales Agency Agreement

Agreement, made this _____ day of _____ 200__, between _____, and Todd Stein & Associates.

1. **Representation.** The Company and Agency agree to a sales representation agreement affective as of May ___ 2005. The Agency agrees to promote, represent and sell, on behalf of the Company, injection molded parts and assemblies, and other manufactured products produced by them, with or without processes such as painting, plating, etc. The Company grants the Agency the right to promote, represent and sell its products on the terms and for the compensation described in this Agreement. The Agency shall act on behalf of the Company to collect outstanding invoices, when necessary, and negotiate favorable terms.

2. **Non-Exclusivity.** The Agency shall have the right to act as a sales agent for other persons and firms and to perform services similar to those to be performed for the Company pursuant to this Agreement, but upon written request by the Company, the Agency shall furnish to the Company a written list of all persons or firms for which the Agency is presently acting as a sales representative. The Agency will subcontract representation for Company to Peter Renaud of Renaud Associates for a list of specific Accounts listed on "Exclusive Customer List".

3. **Office and Contacts.** The Agency shall maintain a permanent place of business, with a telephone and mail facilities. The Agency further agrees to establish and maintain appropriate files on all customers of the Company, and to keep in those files records, correspondence and other communications with customers and prospective customers. The Agency agrees to diligently promote the Company's products by regular personal contact with customers and prospective customers, and to assist the Company in resolving any questions or problems that customers may have with respect to existing business or potential business. The Agency agrees to keep the company informed at all times as to sales activities performed on behalf of the Company. Agency shall provide weekly call reports and monthly summary of sales activity.

4. **Retainer.** The Company shall pay the Agency a fee of $10,000.00 per month for 12 months. The retainer to be paid in two monthly installments of 5,000.00 each on the 15th and 30th of each month. The retainer will be reduced in ratio to the commissions received by the Agency.

5. **Commissions.** The Agency shall be paid a commission on sales of the Company's products as follows:

   A. During the term of this agreement, the Agency shall receive a commission of five percent (5%) on all sales of any of the parts or products listed on Schedule A of this Agreement. (maintenance)
   B. The Agency shall receive a commission on all sales by the Company to any of the Customers listed on Schedule B ("Exclusive Customers") of this Agreement. The Amount of the commission payable with respect to sales to customers listed on Schedule B shall be five percent (5%).
   C. The Agency shall receive a commission on all sales by the Company of a part or product listed on Schedule C ("Non Exclusive Customers") of this Agreement, which commission shall be three and one half percent (3.5%). To be revisited after six (6) months.
   D. It is contemplated by the parties that the Agency will develop new customers for the Company, which customers will be added as either "Exclusive Customer" on Schedule B or as a "Non Exclusive Customer" on Schedule C, as agreed upon by the parties. It is further contemplated that specific parts and products may, from time to time and upon agreement of the parties, be Added or removed from Schedule A. Upon agreement by the parties to change in a Schedule, an amended Schedule shall be prepared, dated, signed by the parties, and become a part of this Agreement. The Agency shall in no event be entitled to a commission on items sold by the Company to any Customer who is not listed on one of the Schedules to this Agreement.
   E. The parties acknowledge that circumstances may require that the Agency's commissions be adjusted for Specific parts and business in order to make or keep the company's price competitive, and agree in such cases to negotiate such adjustments as are appropriate, and to reflect such adjustments in an amendment to the applicable Schedule.

1

6. **Definitions.** It is agreed that for purposes of this Agreement, the following definitions and conditions shall be applicable:

   A. A sale shall be considered to have been made on the date on which the applicable purchase order number is received either verbally or in written by the Company.
   B. For purposes of computing commissions due to the Agency, the applicable commission rate shall be computed on the invoice amount, net of all discounts, transportation costs and any other charges not paid by the customer.
   C. Commissions earned by the Agency shall be due and payable when payment for the sales is received from the customer by the Company. On or before the last day of each month during the Term of this Agreement, the Company shall pay the Agency the commission due and owing with respect to all payments received by the Company through the last day of the previous month, and shall provide the Agency with a written summary of the payments with respect to which the commissions are being paid.
   D. For purposes of computing the commission earned, payable, and any adjustments, the Company's Books of account shall be conclusive and binding.

7. **Termination.** This agreement shall remain in effect unless and until terminated at any time by ninety (90) days written notice by either of the parties. Termination shall be effective ninety (90) days after written notice of termination is mailed or delivered to the person being notified.
   A. In the event of termination for any reason, then the Company shall pay the Agency the following amounts:

      i. The agency will receive the agreed commissions for up to (2) years after termination on existing business; any business quoted during the time of representation; and purchase orders received for any new business quoted or awarded within (6) months after termination. Applies to "Exclusive Customers" only.
      ii. In the event the company chooses to terminate the agreement, the company is still liable to pay the retainer for the balance of the (12) month contract.

8. **Non-Disclosure and Confidentiality.** The Agency agrees that neither it, nor any of its employees or agents shall, either during the term of this Agreement or any time thereafter, communicate or disclose to any persons any knowledge or information acquired during its association with the Company relating to or concerning any of the Company's confidential information regarding inventions, trade secrets, systems, business and affairs of the Company, and agrees that neither it nor any of its employees or agents shall utilize or make available any such knowledge or information to any competitor of the Company.

9. **Administration and Authority.** The Agency shall be responsible for all costs and expenses incurred in connection with performing its duties pursuant to this Agreement. All proposals, quotations and orders submitted by the Agency or by customers shall be subject to acceptance or rejection by the Company for any reason. No employment relationship exists or is being created by the Agreement, and the Agency is an independent contractor for the Company. The Agency shall have no authority to bind the Company not expressly given under the terms of this Agreement.

10. **"Non Exclusive Customers"** The company shall have the right to take back the "Non Exclusive Customers" they had prior to this Agreement, but will owe commissions on all new sales the Agency has brought to the Company.

11. **Agreement.** Any modification or amendment to this Agreement shall be effective on if in writing and signed by both of the parties.

IN WITNESS WEREOF, this Agreement has been signed by each of the parties effective as of the date set out at the beginning of this Agreement.

| | | |
|---|---|---|
| **Company:** | James F. Vincent<br>Vincent Industrial Plastics, Inc.<br>232 Heilman Avenue<br>P.O. Box 47<br>Henderson, Kentucky 42420 | _____<br>___/ ___/ ___ |
| **Representative:** | Todd Stein<br>Todd Stein & Associates<br>6129 Brookstone Lane<br>Grand Blanc, MI 48439 | _____<br>___/ ___/ ___ |
| | Peter Renaud<br>Renaud Associates<br>957 Deep Valley Drive<br>Milford, MI 48381 | _____<br>___/ ___/ ___ |

3

Schedule A "Maintenance"

1. N/A

## Schedule B  "Exclusive Customers"

1. HBPO – Hella-Behr-Plastic Omnium
2. Behr
3. The Magna Companies: Intier, Dortec, WindowMotion, KTM, Decoma, Norplas, Decostar, Donnelly
4. Lear
5. M-TEK, TN and M-TEK Mississippi
6. JCI Automotive
7. Guardian Automotive
8. Faurecia

Schedule C  "Non Exclusive Customers"

1. Diamler Chrysler
2. Dura Automotive
3. Arvin Meritor
4. Grupo Antolin
5. YNA